**Pearl MURPHY, Theodore Murphy, Plaintiffs–Appellees,**

v.

**ARLINGTON CENTRAL SCHOOL DISTRICT BOARD OF EDUCATION, Defendant–Appellant.**

No. 03–7850–CV.

United States Court of Appeals, Second Circuit.

Argued: Dec. 16, 2004.

Decided: March 29, 2005.

As Amended April 15, 2005.

Pearl Murphy and Theodore Murphy, pro se, LaGrangeville, NY, Plaintiffs–Appellees.

David C. Vladeck, Institute for Public Representation, Georgetown University Law Center, Washington, DC (Brian Wolfman, Public Citizen Litigation Group, Washington, DC, on the brief), for Public Citizen, Inc., Amicus Curiae.

Before: NEWMAN, POOLER, and KATZMANN, Circuit Judges.

KATZMANN, Circuit Judge.

This case of first impression calls upon us to determine whether a prevailing plaintiff may recover expert fees under the Individuals with Disabilities Education Act ("IDEA")'s fee shifting provision, 20 U.S.C. § 1415(i)(3)(B), which authorizes a court to award "costs."[1] We affirm the judgment of the United States District Court for the Southern District of New York (Charles S. Haight, Jr., *Judge*), and hold that expert fees are compensable as costs under the IDEA. Moreover, we hold prospectively that a plaintiff's application for fees for experts or consultants who perform services in IDEA actions will normally not be approved unless the application is accompanied by time records contemporaneously maintained by the person performing the services.

Jeffrey J. Schiro, Kuntz, Spagnuolo, Scapoli & Schiro, P.C., Bedford Village, N.Y. for Arlington Central School District Board of Education, Defendant–Appellant.

## BACKGROUND

In August 1999, Pearl and Theodore Murphy (collectively, the "Murphys"), *pro se*, filed a complaint on behalf of their son

---

1. We note that Section 1415 has been much amended in recent years. *See* Individuals with Disabilities Education Improvement Act of 2004, Pub.L. No. 108–446, Sec. 101, § 615, 118 Stat. 2647; Education Flexibility Partnership Act of 1999, Pub.L. No. 106–25, § 6(a), 113 Stat. 41, 49; IDEA Amendments of 1997, Pub.L. No. 105–17, Sec. 101, § 615, 111 Stat. 37, 88–99. The subsection with which we are here concerned has not, however, been altered since the 1997 Amendments. Additionally, we note that although certain portions of the 1997 Amendments did not take effect until 1998, the 1997 revision to Section 1415 took effect immediately upon passage. IDEA Amendments of 1997, Pub.L. No. 105–17, § 201(a), 111 Stat. 37, 156.

Joseph Murphy pursuant to the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1400 et seq.[2] In their complaint, the Murphys sought to require Arlington Central School District Board of Education ("Arlington") to pay Joseph's tuition at a private school for certain school years. Ultimately, the Murphys prevailed in the district court, and this Court affirmed the district court's judgment in the Murphys' favor. *See Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 86 F.Supp.2d 354, 368 (S.D.N.Y. 2000), *aff'd*, 297 F.3d 195 (2d Cir.2002).[3]

By letters dated January and February 2003, the Murphys requested that the district court order Arlington to pay fees and costs incurred during the course of the federal litigation and state administrative proceedings. Included among the Murphys' expenses were $29,350 in fees pertaining to the services of Marilyn Arons, M.S., an educational consultant.

In March 2003, Arlington opposed the Murphys' application for fees, arguing that the district court should "deny or substantially reduce" the amount of Arons's fees because: (1) the IDEA does not allow "lay advocates" to recover attorneys' fees; (2) although experts' fees are recoverable, Arons's fees could not be recovered because she did not testify as an expert, or provide a litigation consulting service, as Arons has no specialized training in courtroom practice or procedure; (3) Arons's time records were insufficient; (4) Arons failed to establish that there was a market rate for her services; and (5) Arons's fees pertaining to her representation of the Murphys during

non-judicial state "special education due process hearings" were specifically exempted from the IDEA.

By Memorandum Opinion and Order dated July 22, 2003, the district court granted the Murphys' application in part, and denied it in part. *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 99 Civ. 9294, 2003 WL 21694398, 2003 U.S.Dist. LEXIS 12764 (S.D.N.Y. July 22, 2003). The district court found that the IDEA provides that the district court, in its discretion, may award a parent who is a "prevailing party" "reasonable attorneys' fees" and that, at impartial due process hearings, a party has "the right to be accompanied and advised by counsel and by individuals with special knowledge or training with respect to the problems of children with disabilities." *Murphy*, 2003 WL 21694398 at *4 (citing 20 U.S.C. § 1415(d)(1) and (e)(4)(B)).[4] The district court endorsed the approach of the Third Circuit, which held that specially qualified individuals such as Arons could not collect "attorneys' fees" for doing work similar to that of an attorney, but could collect for expert consulting services. *See id.* at *4 (citing *Arons v. New Jersey State Bd. of Educ.*, 842 F.2d 58 (3d Cir.1988)).

The district court then stated that it was "in general agreement" with the district courts in *Borough of Palmyra Bd. of Educ., v. R.C.*, No. 97–6119, 31 IDELR ¶ 3 (D.N.J. July 29, 1999) and *Connors v. Mills*, 34 F.Supp.2d 795 (N.D.N.Y.1998) and that, insofar as the Murphys' claim for Arons's fees was allowable, it was "subject to a substantial discount." *Murphy*, 2003 WL 21694398 at *8. The district court found that Arons's time records were suffi-

---

**2.** Although the Murphys are proceeding *pro se* on appeal, Public Citizen, Inc. filed an *amicus curiae* brief in support of the Murphys.

**3.** The facts and procedural history pertaining to the merits of the underlying IDEA claims are fully stated in the above-referenced cases.

**4.** The district court inadvertently referred to the wrong version of Section 1415, citing not to Section 1415 as revised by the IDEA Amendments of 1997, but to an earlier version. This error is immaterial to the issues here raised and resolved on appeal.

cient, notwithstanding the fact that there was no evidence that Arons kept "contemporaneous time records"; unlike attorneys, the district court observed, experts and consultants are not required to keep such records and her "certifications" of services allowed the claims for fees to be considered. *Id.*

The district court determined that Arons's fees for consulting services were compensable from the time the Murphys requested an impartial hearing on September 3, 1998, until the Murphys became "prevailing parties" under the IDEA on March 1, 2000, the date of the district court's ruling in their favor. *Id.* at *9. The district court stated that it did not use the date of this Court's affirmance because the Arons were represented by counsel at that time, and there was no evidence before the court that Arons had rendered any advice regarding the appeal. *Id.* at *9 n. 10.

The court considered which of Arons's services, within the above-described temporal parameters, were compensable under the IDEA based on the standards set forth in *Palmyra* and *Connors*. *Id.* at *9–*10. Following the *Palmyra* court, Judge Haight found that the market rate for Arons's services was $200 per hour. *Id.* at *10. The court determined that the Murphys' claims for mileage costs due to Arons's lack of a driver's license were not compensable. *Id.* at *11. Because the Murphys had not yet paid Arons, the court ruled that an award of pre-judgment interest was not warranted. *See id.* The court concluded that the Murphys were entitled

to recover $8,650 for Arons's fees from Arlington. *Id.*

On August 20, 2003, Arlington timely filed a notice of appeal from the district court's July 22, 2003 Memorandum Opinion and Order.

## DISCUSSION

### A. Standards of Review

■ We generally review a district court's award of attorneys' fees under the IDEA for abuse of discretion. *See G.M. ex rel. R.F. v. New Britain Bd. of Educ.,* 173 F.3d 77, 80 (2d Cir.1999). However, where an appellant challenges "a district court's interpretation of the fee statute itself, our review of this legal issue is *de novo.*" *J.C. ex rel. C. v. Regional Sch. Dist. 10, Bd. of Educ.,* 278 F.3d 119, 123 (2d Cir.2002) (citing *Doyle v. Kamenkowitz,* 114 F.3d 371, 374 (2d Cir.1997); *Mautner v. Hirsch,* 32 F.3d 37, 39 (2d Cir. 1994)). Thus, we review the district court's interpretation of the IDEA's fee-shifting provision *de novo,* and its fee award for abuse of discretion.

### B. Whether the Murphys May Recover Fees for Expert Consultation Under the IDEA

■ It is a question of first impression in this Court whether a prevailing party under the IDEA may recover fees for the services of an educational consultant under the IDEA's fee-shifting provision.[5] Under the IDEA, "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attor-

---

**5.** Arlington urges that this Court "leave the answer" to the question of whether expert fees are compensable under the IDEA "for another day because Ms. Arons did not provide any expert testimony under the guidance of a licensed attorney at any stage of the proceedings." Appellant's Reply Br. at 3–4. Arlington's argument is misplaced. The dis-

trict court did not award Arons fees as a testifying witness; rather, it adopted the position of the Third Circuit and held that Arons may, as an expert, collect under the statute for a limited range of activities, including consulting services. *See* Order at 9 (citing *Arons,* 842 F.2d 58 (3d Cir.1988)).

neys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B). Arlington does not dispute that the Murphys constitute a prevailing party; however, Arlington argues that the Murphys, who proceeded *pro se* in the district court, cannot recover for Arons's fees because she is not an attorney and the IDEA does not otherwise allow a prevailing party to recover fees for experts such as Arons. The Murphys and Public Citizen, Inc. as *amicus curiae* argue that the IDEA's use of the word "costs" should be interpreted to allow reimbursement for expert fees.

Two sister circuits, focusing exclusively on the text, have recently concluded that, although the IDEA's fee provision appears to contemplate that costs include something more than attorney's fees, it "does not specifically authorize an award of costs or define what items are recoverable as costs," and that absent a specific authorization for the allowance of expert witness fees, "federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920." *Neosho R–V Sch. Dist. v. Clark ex rel. Clark*, 315 F.3d 1022, 1031 (8th Cir.2003); *see also T.D. v. LaGrange Sch. Dist. No. 102*, 349 F.3d 469, 482 (7th Cir. 2003).

While we appreciate—and in practice honor, wherever possible—the virtues of relying solely on statutory text, at times text without context can lead to results that Congress did not intend. In our view, although "costs" is a term of art that generally does not include expert fees in civil rights fee-shifting statutes, we believe that Supreme Court precedent, the legislative history of the IDEA upon which the Supreme Court relied in *West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991), *abrogated by statute*, 42 U.S.C. § 1988(c),

and Congressional action in the aftermath of the Supreme Court's ruling in *Casey*, require us here to find that Congress intended to and did authorize the reimbursement of expert fees in IDEA actions.

By way of background, in *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, the Supreme Court, addressing fee-shifting for expert witnesses under Federal of Civil Procedure 54(d) in an antitrust case, held that "when a prevailing party seeks reimbursement for fees paid to its own expert witness, a federal court is bound by the limit of [28 U.S.C.] § 1821(b), absent contract or explicit statutory authority to the contrary." 482 U.S. 437, 439, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). Under § 1821(b), witnesses fees are limited to $40 per day for each day's attendance. Four years later, in *Casey*, the Supreme Court employed the same analysis in construing the fee-shifting provisions of civil rights statutes. Specifically, the Court held that while a prevailing party could recover "a reasonable attorney's fee as part of the costs" in civil rights actions, 499 U.S. at 85 n. 1, 111 S.Ct. 1138 (quoting 42 U.S.C. § 1988), a prevailing party could *not* recover "expert fees" under 42 U.S.C. § 1988, 499 U.S. at 87, 111 S.Ct. 1138 (quoting *Crawford Fitting*), because there was no "explicit statutory authority" indicating that Congress intended for that sort of fee-shifting. *Casey*, 499 U.S. 83, 111 S.Ct. 1138 (1991).

Notably, in reaching this result, the Court expressly compared—and contrasted— § 1988 to the IDEA, the statute we construe in the instant case. The Court observed, in dicta, that a Conference Committee Report on the IDEA stated that "[t]he conferees intend that the term 'attorneys' fees as part of the costs' include reasonable expenses and fees of expert witnesses and the reasonable costs of any test or evaluation which is found to be

necessary for the preparation of the ... case." *Id.* at 91 n. 5, 111 S.Ct. 1138 (quoting H.R. Conf. Rep. No. 99–687, p. 5 (1986), U.S.Code Cong. & Admin.News 1986, pp. 1807, 1808 [hereinafter, the "Conference Committee Report"] ) (omission in original). Justice Scalia, author of the majority opinion in *Casey*, acknowledged that "[t]he statement is an apparent effort to *depart* from ordinary meaning and to define a term of art." *Id.* (emphasis in the original).

We believe that this dicta, as well as the legislative history it relies upon, require us to construe the IDEA as providing for the reimbursement of costs such as those incurred here by Arons in conducting the expert evaluation. For as the Supreme Court, itself, strongly intimated, the IDEA is different from ordinary fee-shifting statutes, because the legislative history of the IDEA unambiguously demonstrates that Congress expressly intended to *allow*, rather than *prevent*, prevailing parties to recover the costs of experts.

In *Casey*, the Supreme Court signaled to Congress that if it wished for expert witness fees to be awarded as costs under § 1988, it would have to amend the then existing § 1988, but that no such action was necessary with regard to IDEA expert witness fees because the Conference Committee report indicated that such expert witness fees were authorized as part of costs under the law. We therefore find it instructive that shortly after the Court's decision in *Casey*, Congress amended § 1988 in order to make expert fees compensable in civil rights actions, but Congress took no similar action with respect to the IDEA. Civil Rights Act of 1991, Pub.L.

No. 102–166, § 113, 105 Stat. 1071. We believe it reasonable to infer that Congress, on the basis of the Supreme Court's decision in *Casey*, saw no need to amend the IDEA because the Court had recognized that, in enacting the IDEA, Congress had sufficiently indicated in the Conference Committee Report that prevailing parties could recover expert fees under the Act.[6]

To those who would question our resort to legislative history, we observe that it was Justice Scalia, a noted skeptic of the use of legislative history, who authored *Casey*'s dicta about the apparent effort by Congress to depart from the ordinary meaning of the term "costs" in the IDEA. *See generally*, Antonin Scalia, *A Matter of Interpretation: Federal Courts and the Law* (1997). We also recognize that, while some legislative history is less reliable than others, a conference committee report is generally among the most authoritative. *See Disabled in Action of Metro. N.Y. v. Hammons*, 202 F.3d 110, 124 (2d Cir.2000) ("Because a conference report represents the final statement of terms agreed to by both houses, next to the statute itself it is the most persuasive evidence of congressional intent.") (*quoting Ry. Labor Executives' Ass'n v. Interstate Commerce Comm'n*, 735 F.2d 691, 701 (2d Cir.1984)); *see also* William N. Eskridge, Jr., et al., *Legislation and Statutory Interpretation*, 307 (2000); Robert A. Katzmann, *Courts and Congress* 63–64 (1997) (quoting Judge James L. Buckley as remarking that, as a senator, "my understanding of most of the legislation I voted on was based entirely on my reading of its language and, where necessary, on explanations contained in the accompanying report"). We do not ignore

---

**6.** And we again note that it is not as if Congress has failed to amend the IDEA, having done so a number of times since *Casey*, most recently, in December 2004. *See* Individuals with Disabilities Education Improvement Act of 2004, Pub.L. No. 108–446, Sec. 101, § 615, 118 Stat. 2647; Education Flexibility Partnership Act of 1999, Pub.L. No. 106–25, § 6(a), 113 Stat. 41, 49; IDEA Amendments of 1997, Pub.L. No. 105–17, Sec. 101, § 615, 111 Stat. 37, 88–99.

the Conference Committee Report here, given the Supreme Court's acceptance of it, the general reliability of the Conference Committee Report itself, and the settled legislative expectations that have obviously resulted in the wake of the *Casey* decision.

Our holding is also consistent with the purposes of the IDEA, which are to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living" and "to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1)(A), (B). Expert testimony is often critical in IDEA cases, which are fact-intensive inquiries about the child's disability and the effectiveness of the measures that school boards have offered to secure a free appropriate public education. The IDEA's procedural safeguards ensure that children and parents can realize whatever benefits are due. Thus, for example, parties to IDEA proceedings have "the right to be accompanied and advised by counsel and by individuals with special knowledge or training with respect to the problems of children with disabilities," 20 U.S.C. § 1415(h)(1), and "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B). An expert such as Arons falls within the category of "individuals with special knowledge." It would be inconsistent with the IDEA's conferral of the right to be accompanied by an "individual[ ] with special knowledge" to find that the IDEA's fee shifting provision barred compensation for such an individual's service. Moreover, a prevailing plaintiff in an IDEA case, in contrast to other civil rights statutes, can collect neither compensatory

damages, monetary relief, nor punitive damages; rather, their relief rests solely in the appropriate education of their child. Absent a fee shifting provision that allows for the recovery of appropriate expert fees, most parents with children with disabilities would have difficulty pursuing their case. Prohibiting expert witness fees for prevailing parents would thus frustrate the purposes of the IDEA, resulting in fewer children receiving the education they deserve.

In reaching the conclusion that the IDEA's fee-shifting provision allowed for the award of experts' fees, we join the Third Circuit, the first court of appeals to address the issue. *Arons*, 842 F.2d 58. In that case, the same Arons who assisted the Murphys in the present case—a self-described lay advocate authorized to represent parents in IDEA due process hearings under New Jersey law—sought to recover attorneys' fees for her successful representation of parents in an IDEA proceeding. *Id.* at 61. Arons claimed that although a state rule prohibited non-lawyer advocates from collecting legal fees, the Education for All Handicapped Children Act (reenacted in 1990 as the IDEA) preempted the state rule and therefore allowed her to collect legal fees. *Id.* The Third Circuit disagreed. *Id.* at 63. However, although the Third Circuit held that Arons could not recover *legal* fees, it held that she could recover expert fees. Relying on the IDEA Conference Committee Report, the Third Circuit wrote that:

nothing [in the IDEA] prevents [Arons] from receiving compensation for work done as an expert consultant or witness. Although we appreciate the difficulty of trying to allocate between compensable time spent in consultation and noncompensable time spent in legal representation, the task is not insurmountable. The receipt of consultation fees should eliminate the financial losses Arons claims to have sustained in the course of

providing assistance to parents of handicapped children.

*Id.* at 62. The court went on to state that New Jersey's prohibition on non-lawyer advocates collecting legal fees "will not frustrate the [IDEA's] purpose of providing parents with expert assistance in navigating the administrative process," because such parents could seek reimbursement for expert fees as part of the "costs" incurred in IDEA actions. *Id.* at 63. The district courts in this Circuit have similarly held that expert fees are compensable under the IDEA, *see, e.g., BD v. DeBuono,* 177 F.Supp.2d 201, 207–08 (S.D.N.Y.2001) (finding, based on the IDEA's legislative history, that expert fees are reimbursable), and no court in this Circuit has since found otherwise, *see J. v. Bd. of Educ.,* 98 F.Supp.2d 226, 242–43 (D.Conn.2000) (noting that district courts in other Circuits have found that expert fees are non-compensable under the IDEA, and finding those decisions unpersuasive based on the IDEA's legislative history). This approach has also been followed by district courts in the First, Fifth, and Sixth Circuits, although our sister Circuit Courts have rarely addressed the issue. *See, e.g., Pazik v. Gateway Reg'l Sch. Dist.,* 130 F.Supp.2d 217, 220–22 (D.Mass.2001); *Brillon ex rel. Brillon v. Klein Indep. Sch. Dist.,* 274 F.Supp.2d 864, 870–72 (S.D.Tex.2003), *rev'd on other grounds,* 100 Fed.Appx. 309 (5th Cir.2004); and *Gross ex rel. Gross v. Perrysburg Exempted Vill. Sch. Dist.,* 306 F.Supp.2d 726, 737–39 (N.D.Ohio 2004); *but see McC. v. Corrigan–Camden Indep. Sch. Dist.,* 909 F.Supp. 1023, 1033 (E.D.Tex.1995). We agree and hold that expert fees are compensable as costs under the IDEA.

### C. Whether the District Court's Fee Award was an Abuse of Discretion

■ Having determined that expert fees are compensable under the IDEA, we must determine whether the district court abused its discretion in determining the amount of the fee award—$8,650 (less than one-third of the amount sought). The only argument offered by appellants is that the district court abused its discretion by awarding Arons fees based on bills that were not contemporaneous time records. While attorneys must document an application for fees with contemporaneous time records, *see New York State Association for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147–48 (2d Cir.1983), no such rule exists for experts or consultants. We see no reason why such experts or consultants, rendering professional services, should not be required to provide similar documentation in support of their claims for fees. Accordingly, by analogy to *New York State Ass'n for Retarded Children, Inc.,* we hold prospectively that a plaintiff's application for fees for experts or consultants who perform services in IDEA actions will normally not be approved unless the application is accompanied by time records contemporaneously maintained by the person performing the services. Because it would be unfair to retroactively apply such a rule to the expert in the case at hand, we find that the district court did not abuse its discretion in not requiring Arons to submit contemporaneous records with the application for fees. Moreover, we find, after an independent review of the record, including Arons's bills and relevant case law, that there are no other errors in the district court's careful Memorandum Opinion and Order.

### CONCLUSION

For the foregoing reasons, the Memorandum Opinion and Order of the district court is AFFIRMED.