Opinion for the court filed by Circuit Judge KAREN LECRAFT HENDERSON.
Dissenting opinion filed by Circuit Judge ROGERS.
KAREN LECRAFT HENDERSON, Circuit Judge.
After prevailing in administrative proceedings against the District of Columbia and District of Columbia Public Schools (collectively, the District) under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400-1487, the appellants — five children with disabilities and their parents — sued under the IDEA’S fee-shifting provision, id. § 1415(f)(3)(B), to recover a portion of their costs that the District refused to pay. The district court granted summary judgment partially in their favor, but declined to include in their award fees paid to expert witnesses beyond the amounts permitted. under 28 U.S.C. §§ 1821 and 1920.[1] See Goldring v. Dist. of Columbia, No. 02-CV-1761, slip op. at 1-10 (D.D.C. May 26, 2004), reprinted in Joint Appendix (J.A.) at 98-107. They now appeal, alleging that the district court erred because, as they see it, an award of expert witness fees to a party prevailing under the IDEA is not so limited. The question before us thus is whether “reasonable attorneys’ fees as part of the costs,” words that are used in section 1415, encompass “expert fees,” words that are not. 20 U.S.C. § 1415(i)(3)(B). We say no — and therefore affirm the district court — because under United States Supreme Court precedent section 1415 of the IDEA precludes the awarding of expert witness fees as part of a prevailing party’s costs.
I.
To “ensure that all children with disabilities have available to them a free appropriate public education ... designed to meet their unique needs,” 20 U.S.C. § 1400(d)(1)(A), the IDEA conditions eligibility for federal education assistance on a state’s implementation of “policies and procedures to ensure” that resident children “who are in need of special education and related services” are “identified, located, and evaluated” and receive “[a]n individualized ' education program.” Id. § 1412(a)(3)-(4). Each child’s individualized education program, or IEP, must be developed by a “team” including the child’s parents, at least one “regular education teacher” and one special education teacher, a local educational agency representative who is knowledgeable about the school’s “general education curriculum” and “the availability of resources” and — “whenever appropriate” — the disabled child himself. *72 Id. § 1414(d)(l)(B)(i)-(iv), (vii); see Reid ex rel. Reid v. Dist. of Columbia, 401 F.3d 516, 518-19 (D.C.Cir.2005). Among other things, the IEP must contain a statement of the child’s current performance level and “the special education and related services” the child will receive from the school. Id. § 1414(d)(1)(A)®, (iii). Parents dissatisfied with “any matter relating to” their child’s “identification, evaluation, or educational placement” or “the provision of a free appropriate public education” to him, id. § 1415(b)(6), may lodge their complaints with a. state educational agency and have their complaints aired at an impartial due process hearing, see id. § 1415(f)(1), where they are accorded “the right to be accompanied and advised by counsel and by individuals with special knowledge or training with respect to the problems of children with disabilities,” id. § 1415(h)(1). Under the IDEA’S fee-shifting provision, the district court “in its discretion, may award reasonable attorneys’ fees as part of the costs ... to a prevailing party who is the parent of a child with a disability.” in such a proceeding or court action. Id. § 1415(i)(3)(B).
Exercising their statutory rights under the. IDEA, the appellant parents complained to the District about their children’s educational placements. Following due process hearings, they requested the District to reimburse their fees and costs pursuant to the IDEA’S fee-shifting statute. With respect to four of the children,[2] the District did not dispute that their parents were the prevailing parties and paid a portion of their requested fees. The parents and children sued to recover the balance.
The district court granted partial summary judgment in their favor. See Goldr-ing, No. 02-CV-1761, slip op. at 10. Relevant to this appeal, it concluded that they could not recover the entirety of their expert fees, “but instead must be limited to no more than what 28 U.S.C. §§ 1821 and 1920 permit.” Id. at 9. According to the district court, because Supreme Court-precedent holds that “ ‘when a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of [section] 1821(b), absent contract or explicit statutory authority to the contrary,’ ” the critical question was “whether the IDEA provides such ‘explicit statutory authority’ permitting recovery of expert witness fees.” Id. at 8 (quoting Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 439, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987)). The IDEA did not, it concluded; therefore, it awarded the appellants only $120.00 in expert witness fees — not the $6,836.50 they sought. Id. at 10.
The appellants sought reconsideration but were no more successful. See Goldring v. Dist. of Columbia, No. 02-CV-1761, slip op. at 1-10 (D.D.C. July 21, 2004), reprinted in J.A. at 113-20. The district court rejected both of their arguments — -that is, that our decision in Moore v. Dist. of Columbia, 907 F.2d 165 (D.C.Cir.1990), held that a prevailing party is entitled to an award of expert fees under the IDEA and that the IDEA’S legislative history demonstrates that the Congress intended a party prevailing under the IDEA to recover expert fees. See Goldring, No. 02-CV-1761, slip op. at 3t8.
*73 The parents and children timely appealed on July 28, 2004. We have jurisdiction to entertain their appeal, see 28 U.S.C. § 1291, and on de novo review, see, e.g., Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C.Cir.1995), we affirm the district court.
II.
The question whether the IDEA’S fee-shifting provision — section 1415 — enables a prevailing party to recover expert fees as part of his costs is one of first impression in our Circuit and one not free of controversy in others. To date four of our sister circuits have treated this issue and divided evenly into opposing camps, two holding an IDEA prevailing party cannot recover expert fees, see T.D. v. La-Grange Sch. Dist. No. 102, 349 F.3d 469, 481-82 (7th Cir.2003); Neosho R-V Sch. Dist. v. Clark, 315 F.3d 1022, 1031-33 (8th Cir.2003), two holding he can, see Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 402 F.3d 332, 337-39 (2d Cir.2005); Arons v. N.J. Bd. of Educ., 842 F.2d 58, 62 (3d Cir.1988). The district courts have likewise failed to reach a consensus on the question, compare, e.g., BD v. DeBuono, 177 F.Supp.2d 201, 207-08 (S.D.N.Y.2001) (allowing recovery of expert fees); Mr. J. v. Bd. of Educ., 98 F.Supp.2d 226, 242-43 (D.Conn.2000) (same); Field v. Haddonfield Bd. of Educ., 769 F.Supp. 1313, 1323 (D.N.J.1991) (same), with Eirschele v. Craven County Bd. of Educ., 7 F.Supp.2d 655, 659-60 (E.D.N.C.1998) (refusing recovery of expert fees); Cynthia K v. Bd. of Educ. of Lincoln-Way High Sch. Dist., 1996 WL 164381, at *2 (N.D.Ill., April 1, 1996) (same), including those within our Circuit, compare, e.g., Czarniewy v. Dist. of Columbia, No. 02-CV-1496, slip op. at 4-5, 2005 WL 692081 (D.D.C. Mar. 25, 2005) (allowing recovery of expert fees); Bailey v. Dist. of Columbia, 839 F.Supp. 888, 892 (D.D.C.1993) (same); Aranow v. Dist. of Columbia, 791 F.Supp. 318, 318 (D.D.C.1992) (same), with George v. Dist. of Columbia, No. 02-CV-1656, mem. at 2 (D.D.C. Mar. 8, 2004) (refusing recovery of expert fees); Goldring, No. 02-CV-1761, slip op. at 9 (same). The correct decision does not seem to us to be difficult to reach, for the Supreme Court has stated in fairly unequivocal terms that language nearly identical to that used in section 1415 is unambiguous and, more to the point, does not allow a prevailing party to shift his expert fees. Accordingly, today we join the Seventh and Eighth Circuits in holding that a prevailing party under the IDEA cannot recover expert fees.
The IDEA’S fee-shifting provision provides that “[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys’ fees as part of the costs ... to a prevailing party who is the parent of a child with a • disability.” 20 U.S.C. § 1415(i)(3)(B). That the crucial statutory language — “reasonable attorneys’ fees as part of the costs,” id. — fails to allow a prevailing party to shift his expert fees flows directly from the application of two Supreme Court decisions. One tells us that “when a prevailing party seeks reimbursement for fees paid to its own expert witnesses a federal court is bound by the limit of § 1821(b) absent contract or explicit statutory authority to the contrary.” Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 439, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). The other tells us that the IDEA’S fee-shifting provision contains no such “explicit statutory authority to the contrary.” See W. Va. Univ. Hosps., Inc. v. Casey, 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991).
In Casey, the Court addressed whether an earlier version of 42 U.S.C. § 1988, which provided that “the court, in its discretion, may allow the prevailing party ... a reasonable attorney’s fee as part of the costs,” satisfied the Crawford Fitting Co. *74 “explicit statutory authority” test. Id. at 87, 111 S.Ct. 1138. The Court concluded that it did not. Id. at 97, 111 S.Ct. 1138. Looking to the “record of statutory usage,” it explained that, “[w]hile some fee-shifting provisions, like § 1988, refer only to ‘attorney’s fees,’ ... many others explicitly shift expert witness fees as well as attorney’s fees.” Id. at 88, 111 S.Ct. 1138 (emphasis in original). By the Court’s count, “[a]t least 34 statutes in 10 different titles of the United States Code explicitly shift attorney’s fees and expert witness costs.” Id. at 89, 111 S.Ct. 1138 (emphasis in original); see id. at n. 4. In view of a record of usage that demonstrated “beyond question” that attorney’s fees and expert witness fees are “distinct items of expense,” the Court concluded that, if it were to hold that “the one includes the other, dozens of statutes referring to the two separately become an inexplicable exercise in redundancy.” Id. at 92, 111 S.Ct. 1138. Not surprisingly, the Court declined to so hold. Accordingly, because section 1415 and the version of section 1988 construed in Casey contain materially identical language and Casey held that section 1988’s language does not enable a prevailing party to shift his expert fees, we cannot but conclude that section 1415 does likewise. That is the end of the matter for us.
But it is not the end for the appellants. Finding the statute’s text unhelpful, they seek refuge in its history. Legislative history is a traditional tool of statutory construction to divine congressional intent, they argue, and, when considered here, it reveals an intent to allow a prevailing party to shift expert fees under section 1415. The appellants point to a single sentence in the House Conference Report on the Handicapped Children’s Protection Act (Conference[1] Report), which amended the IDEA:
The conferees intend that the term “attorney’s fees as part of the costs” include reasonable expenses and fees of expert witnesses and the reasonable costs of any test or evaluation which is found to be necessary for the preparation of the parent or guardian’s case in the action or proceeding, as well as traditional costs incurred in the course of litigating the case.
H.R. CONF. REP. No. 99-687, at 5 (1986), reprinted in 1986 U.S.C.C.A.N. 1789, 1808. While two of our sister circuits have looked to this language in construing section 1415, see Murphy, 402 F.3d at 336-37; Arons, 842 F.2d at 62, we believe recourse to it is simply unwarranted.
While “Reference to statutory design and pertinent legislative history may often shed new light on congressional intent, notwithstanding statutory language that appears superficially clear,” Natural Res. Def. Council v. Browner, 57 F.3d 1122, 1127 (D.C.Cir.1995) (internal quotation marks omitted); accord, e.g., Sierra Club v. ERA, 353 F.3d 976, 988 (D.C.Cir. 2004); Consumer Elec. Ass’n v. FCC, 347 F.3d 291, 298 (D.C.Cir.2003), we do not confront “superficially clear” language here. In Casey, the Supreme Court said that the expression “reasonable attorneys’ fees as part of the costs” is clear, not just superficially so. See 499 U.S. at 98-99, 111 S.Ct. 1138 (rejecting argument that section 1988’s purpose must overcome ordinary meaning of statutory terms because “[w]here [statutory text] contains a phrase that is unambiguous — that has a clearly accepted meaning in both legislative and judicial practice — we do not permit it to be expanded or contracted by the statements of individual legislators or committees during the course of the enactment process”). This is good enough for us for “when the statute’s language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms.” Lamie v. United States Trustee, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 *75 L.Ed.2d 1024 (2004) (internal quotation marks omitted); see also Ratzlaf v. United States, 510 U.S. 135, 147-48, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) (courts should “not resort to legislative history to cloud a statutory text that is clear”); Davis v. Michigan Dep’t of Treasury, 489 U.S. 803, 808-09 n. 3, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989) (“Legislative history is irrelevant to the interpretation of an unambiguous statute.”). In our view this case represents a paradigmatic one for application of the principle that statutory text enacted by the Congress trumps the views expressed by one of its committees.[3] See Neosho R-V Sch. Dist. 315 F.3d at 1032 (“Absent some ambiguity in the statute, we have no occasion to look to legislative history.”); accord T.D., 349 F.3d at 482. As we said last term, “there would be no need for a rule — • or repeated admonition from the Supreme Court — -that there should be no resort to legislative history when language is plain and does not lead to an absurd result, if the rule did not apply precisely when plain language and legislative history may seem to point in opposite directions.” United States ex rel. Totten v. Bombardier Corp., 380 F.3d 488, 494-95 (D.C.Cir.2004).
Continuing down this path, the appellants maintain that the Conference Report gains additional relevance in light of the Supreme Court’s apparent reliance on it in Casey. The appellants are not alone in this view: In reaching a holding contrary to our own, the Second Circuit found the Casey Court’s characterization of this snippet of legislative history as “an apparent effort to depart from ordinary meaning and to define a term of art,” 499 U.S. at 91 n. 5, 111 S.Ct. 1138, to support its-construction of section 1415. See Murphy, 402 F.3d at 336-38. “[Ajpparent” or no, we conclude, as have two other circuits, see T.D., 349 F.3d at 482; Neosho R-V Sch. Dist, 315 F.3d at 1032, that the Conference Report’s “effort” is a failure. A sentence in a conference report cannot rewrite unambiguous statutory text, particularly text with a Supreme Court-tested and -approved meaning. The Casey holding declares that “[w]here [the statute] contains a phrase that is unambiguous— that has a clearly accepted meaning in both legislative and judicial practice — we do not permit it to be expanded or contracted by the statements of individual legislators or committees during the course of the. enactment process.” 499 U.S. at 99-100, 111 S.Ct. 1138 (citing United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)).
Nor are we convinced to reach a different result by the appellants’ other arguments derived from the Casey Court’s footnote reference to the Conference Report. First, we are unpersuaded by the fact that the Justice who included the footnote is a reputed textualist. ■ See Murphy, 402 F.3d at 337 (“To those who would question our resort to legislative history, we observe that it was Justice Scalia, a noted skeptic of the use of legislative history, who authored Casey’s dicta about the apparent effort by Congress to depart from the ordinary meaning of the term ‘costs’ in the IDEA.”). If the Court had found this one sentence of legislative history compelling, it would have included section 1415 in its catalogue of statutes autho *76 rizing a prevailing party to shift attorney’s fees as well as expert fees. In other words, the Court would have counted “[a]t least” 35 such statutes, not 34. Casey, 499 U.S. at 89, 111 S.Ct. 1138.
Second, we cannot agree with the Second Circuit that “it [is] reasonable to infer that Congress, on the basis of the Supreme Court’s decision in Casey, saw no need to amend the IDEA because the Court had recognized that, in enacting the IDEA, Congress sufficiently indicated in the Conference Committee Report that prevailing parties could recover expert fees under the Act.” Murphy, 402 F.3d at 337. While the Supreme Court has instructed us that “[t]he fact that inaction may not always provide crystalline revelation ... should not obscure the fact that it may be probative to varying degrees,” Johnson v. Transp. Agency of Santa Clara Cty., 480 U.S. 616, 629 n. 7, 107 S.Ct. 1442, 94 L.Ed.2d 615 (1987); accord United States v. Delgado-Garcia, 374 F.3d 1337, 1359 (D.C.Cir.2004), we doubt that the Congress’s inaction with respect to section 1415 following Casey is probative at all. More to the point, given that the Casey Court merely labeled the Conference Report an “apparent effort” by the congressional committee and did not number section 1415 among the statutes authorizing the recovery of attorney’s fees and expert fees, we are unwilling to infer from the Congress’s failure after Casey to amend section 1415 that the Congress believed that the Supreme Court had considered the text to have been altered by the Conference Report. Indeed, given that the version of section 1988 construed in Casey is nearly identical to section 1415, the more reasonable inference to draw from the fact that, following Casey, the Congress amended section 1988 but not section 1415 is that the Congress had no intention of allowing recovery of expert fees under the IDEA. Before the Court handed down Casey, the Congress had a proven track record demonstrating its ability to shift expert fees when it desired and, following the Court’s decision, the Congress was — and is — unquestionably on notice- of the precise language required to do so. The former inferential path, in any event, leads to where reason goes to die.
Moving from Supreme Court precedent to our own, the appellants cite our decision in Moore v. Dist. of Columbia, 907 F.2d 165 (D.C.Cir.) (en banc), cert. denied, 498 U.S. 998, 111 S.Ct. 556, 112 L.Ed.2d 563 (1990), as well as the procedural history leading up to it, for the proposition that we have long allowed an IDEA prevailing party to recover expert fees. In Moore, however, we addressed only the issue “whether the Handicapped Children’s Protection Act ... authorizes a court to award attorney fees to a party who has prevailed in an administrative proceeding under the Education of the Handicapped Act,” id. (internal citations omitted), and “conclude[d] that both the text and the legislative history of HCPA evidence congressional intent to authorize recovery of fees by a parent who prevails in EHA administrative proceedings.” Id. at 176. Our holding in Moore did not consider whether a prevailing party may shift his expert fees, as appellants themselves readily concede. See Appellants’ Br. at 29 (“Th[e] [expert fees] issue simply was never addressed.”).
The appellants’ last argument is that, given the critical role of professional opinion in assessing the educational needs of a child with disabilities, the upshot of denying an IDEA prevailing party expert fees will be that parents seeking to contest a school district’s educational placement may face a severe informational disadvantage vis-á-vis the school district. While we are not unsympathetic to the challenges that these and other parents often confront in securing an appropriate free education for their children with disabilities, this line of argument — based on considerations of *77 public policy rather than statutory interpretation — is, in our view, addressed to the wrong branch of government under our constitutional design. Our job is to interpret the law as it is, not as it should be. See Neosho R-V Sch. Dist. 315 F.3d at 1033 (“ ‘[T]he problems of public policy are for the legislature and [the court’s] job is one of interpreting statutes, not redrafting them.’ ” (quoting Welsh v. Boy Scouts of Am., 993 F.2d 1267, 1270-71 (7th Cir.1993))). Accordingly, a prevailing party under the IDEA may shift expert fees only to the extent allowed under sections 28 U.S.C. §§ 1821 and 1920.[4]
Finally, a word or two about our colleague’s dissent. Of course, the Congress may adopt a term of art in a fee-shifting statute. See Casey, 499 U.S. at 91 n. 5, 111 S.Ct. 1138. Of course, a conference report offers “ ‘persuasive evidence of congressional intent’ after statutory text itself.” Moore, 907 F.2d at 175 (quoting & citing Demby v. Schweiker, 671 F.2d 507, 510 (D.C.Cir.1981)) (emphasis added). But the words of the statute do indeed enjoy pride of place: Our “inquiry into the Congress’s intent proceeds, as it must, from ‘the fundamental canon that statutory interpretation begins with the language of the statute itself.’ ” Am. Fed’n of Labor & Congress of Indus. Orgs. v. Fed. Elec. Comm’n, 333 F.3d 168, 180 (D.C.Cir.2003) (Henderson, J., concurring in judgment) (quoting & citing Butler v. West, 164 F.3d 634, 639 (D.C.Cir.1999)). Thus job one is to read the statute, read the statute, read the statute. See Am. Fed’n of Labor & Congress of Indus. Orgs., 333 F.3d at 180 (Henderson, J., concurring in judgment) (citing HENRY J. FRIENDLY, BENCHMARKS 202 (1967) (“(1) Read the statute; (2) read the statute; (3) read the statute!” (quoting Justice Frankfurter’s “threefold imperative to law students”))). Moreover, we do not read section 1415 in a prece-dential vacuum. Despite the dissent’s characterization of Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 439, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987), as allowing a court to “impl[y]” or “infer” “explicit statutory authority” to shift expert fees, Dissent at 7, 9, the Supreme Court held otherwise in Casey in deciding “whether the term ‘attorney’s fee’ in § 1988 provides the ‘explicit statutory authority’ required by. Crawford Fitting ” to shift expert fees. Casey, 499 U.S. at 87, 111 S.Ct. 1138. It held that the term “unambiguously]” does not; the term “has a clearly accepted meaning in both legislative and judicial practice,” a meaning not “expanded or contracted by the statements of individual legislatures or committees.” Id. at 98, 111 S.Ct. 1138 (emphasis added). Accordingly, the dissent’s observation that “nothing in Casey precludes reference to legislative history clearly indicating that Congress intends to depart from the ordinary meaning of a statutory phrase and to define that phrase as a term of art” proves nothing with respect to section 1415. Dissent at 6. *78 Given that the Congress used a “restrictive” term in section 1415 and section 1988, Casey, 499 U.S. at 99, 111 S.Ct. 1138, our applying the same “restrictive” meaning to it now can hardly be labeled an “overread-ing” of Casey. Dissent at 7.. And given that the Supreme Court found the term unambiguous, our rejection of a legislative committee’s differing gloss cannot, consistent with Supreme Court precedent and our own, fairly be described as allowing “the Court to trump Congress in defining statutory terms.” Dissent at 5. To do otherwise would substitute the Congressional Record for the United States Code, as the Supreme Court cautioned us against in Casey. See 499 U.S. at 98, 111 S.Ct. 1138. Thus, while the dissent “infer[s]” “a comprehensive statement of congressional intent” by reading a brief passage of legislative history, Dissent at 4, 9, we find no “explicit statutory authority” to shift expert fees in section 1415 by reading the words of the statute.
‡ $ H* ‡ ‡ ‡
For the foregoing reasons, the judgment of the district court is affirmed.

So ordered.

. Section 1821 provides that "[a] witness shall be paid an attendance fee of $40 per day for each day’s attendance.” 28 U.S.C. § 1821(b).

. Because Keith Murfee's parents' hearing request was dismissed after their counsel withdrew the request, see J.A. 87, the District disputed that Keith Murfee was a prevailing party, see J.A. 96. The district court agreed, holding that he had not prevailed because the benefits he received were attained by virtue of a private agreement with "no involvement by the hearing officer.” Goldring, No. 02-CV-1761, slip op. at 5. This appeal does not challenge that holding.

. At oral argument, there was some discussion whether the Congress voted on the language of the Conference Report the appellants rely on. See Tr. of Oral Argument at 4:10. We have explained before that “[wjhile both the conference report and the joint explanatory statement are printed in the same document, Congress votes only on the conference report," which contains the "formal legislative language.” Roeder v. Islamic Republic of Iran, 333 F.3d 228, 236 (D.C.Cir.2003). The language the appellants rely on is from the "joint explanatoiy statement,” see H.R. CONF. REP. NO. 99-687, at 5 (1986), reprinted in 1986 U.S.C.C.A.N. 1789, 1808, and thus has no force of law. See id. at 237.

. While the appellants contend that 28 U.S.C. § 1821 is inapplicable in this context because it is limited to court witnesses, see 28 U.S.C. § 1821(a)(1) ("[A] witness in attendance at any court of the United States, or before a United States Magistrate Judge, or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall be paid the fees and allowances provided by this section.”), we find their argument, which they raised for the first time in their reply brief, untimely. See, e.g., Presbyterian Med. Ctr. of the Univ. of Penn. Health Sys. v. Shalala, 170 F.3d 1146, 1152 (D.C.Cir.1999) (court need not consider argument raised for first time in reply brief). In any event, we agree with the Eighth Circuit that “the specific language of the IDEA broadens the application of the general cost statutes by permitting the court to 'award reasonable attorneys’ fees as part of the costs’ 'in any action or proceeding brought under this section.’ ” Neosho R-V Sch. Dist., 315 F.3d at 1031-32 (citing 20 U.S.C. § 1415(i)(3)(B) & emphasis in original).

. The Conference Report accompanied the Handicapped Children’s Protection Act of *79 1986, which amended the IDEA to include a fee-shifting provision that was originally codified at 20 U.S.C. § 1415(e)(4)(B) and is currently codified at 20 U.S.C. § 1415(i)(3)(B).