ROGERS, Circuit Judge,
dissenting.
In West Virginia University Hospitals, Inc. v. Casey, 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991), the Supreme Court construed the “ordinary meaning” of the term “attorney’s fees” in 42 U.S.C. § 1988 not to include fees for experts’ services. Id. at 91-92 & n. 5, 111 S.Ct. 1138. Listing 34 statutes that explicitly shift both attorney’s fees and expert witness fees, see id. at 89 & n. 4, 111 S.Ct. 1138, the Court explained that “this statutory usage shows beyond question that attorney’s fees and expert fees are distinct items of expense,” id. at 92, 111 S.Ct. 1138. The Court further explained that while lower courts may have relied previously on their equitable powers to shift fees- for experts’ services, they did not shift them as an element of attorney’s fees, see id. at 92, 111 S.Ct. 1138, and at the time § 1988 was enacted, “neither statutory nor judicial usage regarded the phrase ‘attorney’s fees’ as embracing fees for experts’ services,” id. at 97, 111 S.Ct. 1138. Thus, the Court concluded that the “clearly accepted meaning in both legislative and judicial practice” of the phrase “attorney’s fees” was “unambiguous” and could not be “expanded or contracted by the statements of individual legislators or committees during the course of the enactment process.” Id. at 98-99, 111 S.Ct. 1138. The Court therefore held that the term “attorney’s fees” in § 1988 did not provide the necessary “explicit statutory authority” to shift fees for experts’ services beyond the limits set in 28 U.S.C. §§ 1821 and 1920. Id. at 86-87, 111 S.Ct. 1138 (quoting Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 439, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987)). While my colleagues treat this conclusion as “the end of the matter” because the fee-shifting provision of the Individuals with Disabilities Education Act (“IDEA”), 20 U.S.C. § 1415(i)(3)(B), contains the same language construed by the Court in Casey, Op. at 7, I conclude, in light of this court’s en banc decision in. Moore v. District of Columbia, 907 F.2d 165 (D.C.Cir.1990) (en banc), that the Supreme Court’s definition of the “ordinary meaning” of the term “attorney’s fees” does not apply to the IDEA’S fee-shifting provision' because Congress clearly expressed its intent in the Conference Report to define the phrase “attorney’s fees as part of the costs” as a term of art to include fees for experts’ services. See H.R. CONF. REP. NO. 99-687, at 5 (1986), reprinted in 1986 U.S.C.C.A.N. at 1807-08.[1] Accordingly, I respectfully dissent.
*79 The Joint Explanatory Statement in the Conference Report accompanying the fee-shifting provision of the IDEA states:
The conferees intend that the term “attorneys’ fees as part of the costs” include reasonable expenses and fees of expert witnesses and the reasonable costs of any test or evaluation which is found to be necessary for the preparation of the parent or guardian’s case in the action or proceeding, as well as traditional costs incurred in the course of litigating a case.
Id. In footnote 5 of the Casey opinion, the Supreme Court explained that this statement did not provide evidence of the “ordinary meaning” of the term “attorney’s fees” in § 1988 because the “specification [in the Conference Report] would have been quite unnecessary if the ordinary meaning of the term included those elements. The statement is an apparent effort to depart from ordinary meaning and to define a term of art.” Casey, 499 U.S. at 91 n. 5, 111 S.Ct. 1138. Thus, the Court recognized in footnote 5 that Congress could depart from the ordinary meaning of the statutory phrase in § 1988 by defining it as a term of art. While the Second and Third Circuits view the Conference Report accompanying the IDEA’S fee-shifting provision as persuasive evidence that Congress intended to authorize recovery of fees for experts’ services in IDEA proceedings, see Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 402 F.3d 332, 337 (2d Cir.2005); Arons v. New Jersey State Bd. of Educ., 842 F.2d 58, 62 (3d Cir.1988), my colleagues join the Seventh and Eighth Circuits in rejecting reliance on the Conference Report on the grounds that the Supreme Court in Casey defined the ordinary meaning of the term “attorney’s fees” and that the “apparent effort” in the Conference Report to depart from that meaning was unsuccessful. See Op. at 76; T.D. v. LaGrange Sch. Dist. No. 102, 349 F.3d 469, 482 (7th Cir.2003); Neosho R-V Sch. Dist. v. Clark, 315 F.3d 1022, 1032 (8th Cir.2003). In my view, that conclusion is inconsistent with this court’s en banc decision in Moore and rests on a misreading of Casey and Crawford Fitting.
Sitting en banc, this court in Moore relied on a conference report as evidence of congressional intent to authorize recovery of attorney’s fees incurred in IDEA administrative proceedings. See Moore, 907 F.2d at 175. In so doing, the court recognized that a conference report “ ‘is the most persuasive evidence of congressional intent’ after statutory text itself.” Id. (quoting Demby v. Schweiker, 671 F.2d 507, 510 (D.C.Cir.1981)). Similarly, in relying on the Conference' Report accompanying the IDEA’S fee-shifting provision as evidence of congressional intent to allow the shifting of fees for experts’ services in IDEA proceedings, the Second Circuit in Murphy explained why a joint explanatory statement in a conference report is more persuasive as evidence of legislative intent than a committee report prepared before either the House or the Senate has passed a bill. See Murphy, 402 F.3d at 337. Because a conference report “represents the final statement of terms agreed to by both houses, next to the statute itself it is the most persuasive evidence of congressional intent.” Id. (quoting Disabled in Action of Metro. N.Y. v. Hammons, 202 F.3d 110, 124 (2d Cir.2000)). Although my colleagues observe that Congress does not vote on the joint explanatory statement, see Op. at 75 n. 3 (citing Roeder v. Islamic Republic of Iran, 333 F.3d 228, 236 (D.C.Cir.2003)), it is nonetheless true that in voting on the statutory language agreed to by the House and Senate conferees, *80 Congress can reasonably be understood to accept the joint explanatory statement as the intended meaning of the statutory text. See Moore, 907 F.2d at 176; see also Murphy, 402 F.3d at 337 (citing ROBERT A. KATZMANN, COURTS AND CONGRESS 63-64 (1997)). As conference reports are often terse statements unaccompanied by the kind of extended analysis contained in the initial reports of the individual committees of the House and Senate, the fact that the Conference Report accompanying the fee-shifting provision of the IDEA contains only a “single sentence” on fees for experts’ services is not a reason for rejecting its persuasive force, Op. at 74, especially when that sentence is a comprehensive statement of congressional intent on the subject.
While, as my colleagues point out, Op. at 74 - 75, the Supreme Court has held that there is no occasion to resort to legislative history when the statutory language is clear, the Court has also held that the “ ‘strong presumption’ that the plain language of the statute expresses congressional intent [can be] rebutted ... when a contrary legislative intent is clearly expressed,” such as a “conclusive statement in the legislative history.” Ardestani v. INS, 502 U.S. 129, 135-36, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991) (quoting Rubin v. United States, 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981)) (internal citation omitted). Indeed, because the ultimate purpose of statutory construction is to effectuate congressional intent, cf. Chickasaw Nation v. United States, 534 U.S. 84, 94, 122 S.Ct. 528, 151 L.Ed.2d 474 (2001), a statutory phrase is to be given its ordinary meaning only “[i]n the absence of persuasive .reasons to the contrary.” Banks v. Chicago Grain Trimmers Ass’n, 390 U.S. 459, 465, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968); Nat'l Insulation Transp. Comm. v. ICC, 683 F.2d 533, 537 (D.C.Cir.1982). Although the Court in Casey found no persuasive evidence of congressional intent to depart from the ordinary meaning of the term “attorney’s fees” in § 1988, see 499 U.S. at 98, 111 S.Ct. 1138, here the Conference Report accompanying the IDEA’S fee-shifting provision clearly and conclusively states Congress’s intent to define the phrase “attorney’s fees as part of the costs” as a term of art to include fees for experts’ services. To apply the Supreme Court’s definition of the ordinary meaning of the term “attorney’s fees” to the IDEA in the face of contrary legislative intent is to allow the Court to trump Congress in defining statutory terms. While my colleagues correctly point out that the “inquiry into the Congress’s intent ... begins with the language of the statute,” Op. at 77 (quoting Am. Fed’n of Labor & Congress of Indus. Orgs. v. Fed. Election Comm’n, 333 F.3d 168, 180 (D.C.Cir.2003) (Henderson, J., concurring in the judgment) (emphasis added)), they fail to acknowledge that it does not always end there. The situation might be somewhat different had the Court in Casey purported to define “attorney’s fees” as a term of art, as it did with the term “prevailing party” in Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources, 532 U.S. 598, 604-05, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). Even in that situation, this court and other circuits have recognized that the Supreme Court’s definition of “prevailing party” in Buckhannon is only presumptive and that “some good reason” may compel the court to construe the term differently in a different statute. Oil, Chem. & Atomic Workers Int’l Union v. Dep’t of Energy, 288 F.3d 452, 455 (D.C.Cir.2002); see also Doe v. Boston Pub. Sch., 358 F.3d 20, 25-26 (1st Cir.2004); T.D., 349 F.3d at 475 (7th Cir.2003).
Thus, while the Court in Casey reasoned that construing the phrase “attorney’s fees” in § 1988 to include fees for experts’ *81 services would render superfluous the statutory language in the 34 statutes explicitly shifting both attorney’s fees and expert fees, see 499 U.S. at 92, 111 S.Ct. 1138, it did so in the context of defining the ordinary meaning of the term “attorney’s fees,” recognizing in footnote 5 the possibility that Congress could depart from the ordinary meaning of the term by defining the statutory phrase as a term of art. Moreover, while the Court in Casey took pains to demonstrate that the term “attorney’s fees” had a “clearly accepted meaning in both legislative and judicial practice” at the time § 1988 was enacted, id. at 98, 111 S.Ct. 1138, it offered only a conclusory response to the dissent’s position that fees for experts’ services were part of “costs.” Id. at 87 n. 3, 111 S.Ct. 1138. Finally, while the Court in Casey warned that legislative history could not change the unambiguous ordinary meaning of a statutory phrase, see id. at 98, 111 S.Ct. 1138, that statement was based on the Court’s observation that, in enacting § 1988, Congress intentionally “chose ... to enact more restrictive language” than that in the 34 statutes that explicitly shift both attorney’s fees and expert fees, id. at 99, 111 S.Ct. 1138. The Conference Report indicates, as footnote 5 acknowledges, that Congress made a different choice in enacting the fee-shifting provision of the IDEA: instead of relying on the ordinary meaning of the term “attorney’s fees,” it chose to define the phrase “attorney’s fees as part of the costs” as a term of art to include fees for experts’ services. Thus, while Casey instructs that legislative history cannot alter the ordinary meaning of a statutory phrase that the Court has construed, nothing in Casey precludes reference to legislative history clearly indicating that Congress intends to depart from the ordinary meaning of a statutory phrase and to define that phrase as a term of art.
In disregarding the Conference Report as evidence of congressional intent, my colleagues reason that if the Supreme Court in Casey had viewed Congress’s “apparent effort” in enacting IDEA’S fee-shifting provision to depart from the ordinary meaning of the term “attorney’s fees” as successful, it would have listed 35 statutes instead of 34. See Op. at 75-76. In listing the 34 statutes, however, the Court did not purport to catalog every statute that authorizes the shifting of fees for experts’ services; rather, it identified only the statutes that “explicitly shift attorney’s fees and expert witness fees,” Casey, 499 U.S. at 89, 111 S.Ct. 1138 (first emphasis added), saying nothing, other than in footnote 5, about statutes like the IDEA that implicitly do so by defining the phrase “attorney’s fees as part of the costs” as a term of art to include fees for experts’ services. Thus, the fact that the IDEA is not included in the list of statutes that explicitly shift both attorney’s fees and expert witness fees does not indicate that the Court viewed Congress’s “apparent effort” to depart from the ordinary meaning of “attorney’s fees” as unsuccessful. Nor does footnote 5 itself indicate that the “apparent effort” was a failure. While the word “apparent” can mean “ostensible rather than actual,” suggesting that the effort was unsuccessful, it can also mean “capable of being easily understood,” or “obvious,” suggesting that the effort was successful. See RANDOM HOUSE WEBSTER’S COLLEGE DICTIONARY 64-65 (1999). Thus, in concluding that the Court in Casey viewed the “apparent effort” as a failure, my colleagues read too much into footnote 5.
My colleagues also read too much into Crawford Fitting, essentially adopting the overreading by the Seventh and Eighth Circuits in T.D. and Neosho. See Op. at 6. While the Eighth Circuit acknowledged in Neosho that the phrase “attorney’s fees as part of the costs” in the IDEA “assumes, by its construction, that costs include *82 something more than attorney’s fees,” 315 F.3d at 1031 (quoting Pazik v. Gateway Reg. Sch. Dist., 130 F.Supp.2d 217, 220 (D.Mass.2001)) (internal quotation marks omitted), it concluded based on Crawford Fitting that “[a]bsent a specific definition of costs,” the recovery of expert fees is limited by 28 U.S.C. §§ 1821 and 1920, id. Noting that the “plain language” of the IDEA’S fee-shifting provision does not explicitly authorize the shifting of fees for experts’ services in excess of the limits set in 28 U.S.C. §§ 1821 and 1920, the Eighth Circuit concluded that the “apparent effort” to shift fees for experts’ services in the Conference Report was “unsuccessful” because it was not the kind of “explicit statutory authority” required by Crawford Fitting. Id. at 1032. Adopting the Eighth Circuit’s reasoning, the Seventh Circuit in T.D., 349 F.3d at 481-82, agreed.
The Supreme Court held in Crawford Fitting that a court may not shift expert witness fees in excess of the amounts authorized in 28 U.S.C. §§ 1821 and 1920 “absent contract or explicit statutory authority to the contrary.” 482 U.S. at 439, 107 S.Ct. 2494. As the separate opinions of Justice Blackmun and Justice Marshall indicate, the Court in Crawford Fitting did not reach the question whether § 1988, or any other statute, authorized the shifting of expert witness fees. See id. at 445, 107 S.Ct. 2494 (Blackmun, J., concurring); id. at 446 n. 1, 107 S.Ct. 2494 (Marshall, J., dissenting). In that case, involving the antitrust laws, the district court invoked no specific statute in shifting expert witness fees, instead relying solely on its general discretion to award costs under Rule 54(d) of the Federal Rules of Civil Procedure. See id. at 438-39, 107 S.Ct. 2494. Thus, in the context of the Crawford Fitting decision, the phrase “explicit statutory authority” refers not to explicit statutory language, but to specific statutory authority apart from the court’s general discretion to shift costs under a procedural rule. See id. Indeed, the Court emphasized the necessity of “plain evidence of congressional intent to supercede” the limits set in 28 U.S.C. §§ 1821 and 1920. Id. at 445, 107 S.Ct. 2494. While it is true that the Court indicated that explicit statutory text would serve as plain evidence of congressional intent to shift expert witness fees, it did not state that statutory text was the only acceptable evidence of congressional intent. Rather, the Court stated:
We will not lightly infer that Congress has repealed §§ 1920 and 1821, either through Rule 54(d) or any other provision not referring explicitly to witness fees. As always, “ ‘[w]here there is no dear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment.’ ”
Id. (alteration and emphasis in original) (quoting Radzanower v. Touche Ross & Co., 426 U.S. 148, 153, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976)). By stating that it would not lightly infer authority to shift expert witness fees absent an explicit statutory provision, the Court acknowledged that there may be certain circumstances in which it would infer such authority based on plain evidence of clear congressional intent. Because this court treats conference reports as strong evidence of congressional intent, see Moore, 907 F.2d at 176, and because the Conference Report accompanying the IDEA’S fee-shifting provision provides plain evidence that Congress clearly intended for the statutory phrase “attorney’s fees as part of the costs” to authorize the shifting of fees for experts’ services, that statutory phrase provides the “explicit statutory authority” required by Crawford Fitting.
Accordingly, I would 'reverse and vacate the order of the district court denying appellants an award of fees for experts’ services in excess of the amounts set in 28 *83 U.S.C. §§ 1821 and 1920, and I respectfully dissent.